Good morning, Your Honors. My name is Gaspard J. Bono and I'm appearing on behalf of Appellant Wudi Industrial Co., Ltd. In this appeal, there are two fundamental questions for this Court. One, what is the plain meaning of Paragraph 6, in particular Paragraph 6B? When that paragraph is understood, it is clear there has been no breach by Wudi. And the second issue before this Court is did Wong, the appellee, meet its heavy burden for entry of an injunction? And the record is clear that Wong did not. Under Virginia law, the interpretation of a settlement agreement draws on standard contract principles and is subject to de novo review. The Supreme Court of Virginia has explained, the search for this plain meaning does not myopically focus on a word here or a phrase there. Instead, it looks at a word in the context of a sentence, a sentence in the context of a paragraph, and a paragraph in the context of the entire agreement. The plain meaning of a word depends not merely on semantics and syntax, but also on the holistic context of the word within the instrument. Now, Wong is asking this Court to look at the phrase in 6B with blinders on. But as the Virginia Supreme Court has made clear, each paragraph and the entire agreement needs to be looked at in order to understand what does paragraph 6B mean. Now, if you look at each paragraph of this settlement agreement, it provides separate and distinct obligations and restrictions. And it distinguishes very clearly between visible content on websites and platforms on the Internet and what is not visible on these platforms. For example, paragraph 2B addresses trademark terms, and it relates to the parties' respective obligations under trademark use. Paragraph 3 talks about manufacturing and says where you can manufacture your branded products. Paragraph 4 specifically addresses advertising and promotional materials, and it says it relates to those materials and prohibits each party from engaging in the use of other parties' marks on websites or in other advertising materials. Paragraph 5 addresses websites and relates to website contents, and it prohibits each party from using the other's website contacts or content, product descriptions, photos, or images on a landing page. Now, paragraph 6, which we're talking about here is captioned AdWords, and it relates to words for what is known as targeted advertising on search engines or shopping sites or similar terms or keywords on social media platforms. And this is clear when you examine the platforms that we're talking about here, because paragraph 6B was not written in a vacuum or with blinders on. It was written with an understanding of what the platforms and the social media platforms provides, and it was written as part of the entire agreement and with a knowledge of these existing platforms, shopping sites, social media sites, and what each of those media provided in terms of targeted advertising, such as the use of keywords or AdWords that operate to drive users to certain pages on their respective platforms. And we outlined this in detail in our opening brief at pages 19 and 24, and it's very important. Now, you're appealing, you've got two appeals here, right? Well, we file two notices of appeal if you're one prior to judgment. And they're consolidated. Yes, correct. And you've got two orders. Correct. Do you have any findings of fact or conclusions of law from the district court? No, the district court violated... Which is not, you don't have any findings of fact or conclusions of law from the district court. No, you're right. Are you appealing a specific performance order or an injunction, or both? You're right. As we argued below and as we've argued on this appeal, despite the fact that the district court calls this a specific performance of order, it clearly is injunctive in nature. I respectfully submit... So you say you're appealing an injunction. Yes. Is that what you say? Yes, Your Honor. And the order as it exists. You're appealing an injunction of which order? Or both orders? Both of his orders. There's 22 different orders, and you say both of them are injunctions? The second one was, he termed his second order not an injunction, but because he endorsed the first order, it is an injunction. Yes, Your Honor, because it orders enumerated steps. The first order that you say is an injunction, the judge said it's a specific performance order. And it was erroneous for him to say that because... And you're claiming on appeal that that's erroneous. Yes, Your Honor. Yes. And you argued to the district court that it was an injunction? Yes, I personally argued that to him. Correct. And did you argue the district court that he had to make findings of fact and conclusions of law? Yes, Your Honor. Specifically. Specifically rule 52? And 65. Yes, Your Honor. Well, 65 pulls through 52. Yes, Your Honor. For an interlocutory injunction, in granting or infusing an interlocutory injunction, the court must similarly state the findings and conclusions that support its action, referring back to that. But anyway... Yes, Your Honor. So you say it's an injunction. How are we supposed to be able to review it if we don't have any findings or conclusions of law? Well, I understand... It's not explained. I understand that the district court's failure to comply with rules 52 and 65 puts this court at a disadvantage because you're left without, as one of your earlier cases, the why. Why did the district court draw his conclusion? Because he didn't do the evaluation and make the findings it should have, and that's what... You all had an oral argument in the district court, didn't you? Yes, correct. Yes. One or two? Two. Two oral arguments in the district court? Yes. And in both arguments, we asked for that, we made it clear that he was required to make findings of fact and conclusions of law. We also... But you say on appeal he hadn't made them. That's correct, Your Honor. Yes. So do you want us to remand it to have them made then? Well, Your Honor... You're saying this is an injunction. It's not a specific performance order. So what do you want us to do? You want us to say it's an injunction without the required findings and conclusions required by the rule and remand it for compliance with the rule? Your Honor, that's our... Is that what you want, or do you want us to figure it all out ourselves? Well, I would... I understand the second argument is also something I believe that you're required to do on the second issue as to whether an injunction... We weren't required to do it. The district court was required to do it. Now... Under the rule is what you say. Yes, Your Honor. Okay. So let me be clear. There's two issues here. There's the issue of breach, and there's the issue of injunction. And... And the stay order, you came up here and asked for a stay, and you got a stay both times. That's correct, Your Honor. So the order is not... Whether ever it is... It stays. It's not effective on you. That's correct, Your Honor. And... You've got to stop to it. And if... And if you're... If this court decides to simply remand this case without making a determination on breach, which I would like to argue that you should also make a determination that there was no breach, but if you do that, I would respectfully request that this court... How can we make a determination on the breach when there have been no explanation of the so-called breach? Be... Or no ruling on it. Right. That explain... It's been explained. Right. So, Your Honor, let me add... Let me finish my first statement, and I'll answer your question. If you do remand, I would respectfully request that this court continue to stay until this... That the district court makes its second determination, and we see whether another appeal is required, in all fairness. You recognize I'm the only... I don't know if you knew or not. I was on both of the stay motions. I know that very well, Your Honor. Yes. And there were four other judges that were involved on the difference. I'm the only common denominator. I appreciate that, Your Honor. When I saw... When I saw the list this morning... I voted against the stay both times. Did you know that? I'm sorry? Your Honor, I... I voted against the stay both times. I saw your... I saw your dissenting comment, Your Honor. Do you know why I didn't vote... Didn't vote to insist? I... I believe it was a procedural question on rules 8A. Procedural default on your part that you didn't move in the district court for a stay from the district court. Either time. I... You came up here. Well, Your Honor... You didn't... You came up here with... You didn't comply with the rules of the court. I understand that was your opinion. I was not involved at that time, so I can't... That was my problem. I didn't ever reach the merits, or considering the merits of your stay motion, because you failed to go back and ask the district judge for a stay, which is the rule that requires you to do it, or rule 8, I think it is. I appreciate that was Your Honor's opinion at that time. That was my view of why the... Of the stay motion, but now it's up here, and you still don't have the findings, if it's an injunction. Yes, Your Honor, but even if it's not an injunction, this court's opinion in Hensley, where there's a dispute over a settlement... I thought an injunction needs to be explained. Is that what you're saying? I'm sorry, Your Honor? No, if it's not an injunction, it still needs to be explained. On the Hensley ruling, this court ruled that the court was still required, where there were disputed provision of a settlement agreement, to make... Have an evidentiary hearing and to make findings of fact and conclusions of law, so that this court could have the opportunity of a full record to review that. Can I ask... Yes, that's correct. Can I ask about that? It seems to me the case is about enforcing a settlement agreement. They envision an evidentiary hearing and findings of fact because the parties don't agree on what the settlement agreement is, right? There's a factual dispute about, did we agree to X or did we agree to Y, or is there even an agreement? Here, there's no dispute that an agreement exists. There's no dispute about what it says. The dispute is about interpretation, legal interpretation of the words of the agreement. Were there any disputed material facts? My understanding from the briefing was that no one disputed the facts are the facts, and the question is, do those facts violate this provision? But am I wrong about that? Were there material disputed facts? The dispute is what that term, that phrase in paragraph 6B means. That is a material dispute of great magnitude to my client because... And that's a legal question, right? It's a question of contract interpretation. You just told me that contract interpretation principles apply. Yes, and that's why I separated out the two issues of breach and injunction, and I agree with Judge King. If this court were to reach the injunction question, meaning you're going to rule that there was a breach, which I respectfully submit you should not do on this record, but if you get to an injunction, I respectfully submit you cannot, that injunction should be reversed because the findings were not made. But what are the findings? What findings of fact need to be made if there were no factual disputes? The judge didn't make any findings. What the parties negotiated, what that provision means, what the parties understood it to mean at the time... He has a detailed order saying what you can and can't do, and that makes pretty clear what... The order says we have to do all these things, and those provisions in that order were not in the agreement. They're not in the agreement. He didn't say comply with this term of the agreement that says this. The order doesn't say this. It was a verbatim order submitted by the other side, and Judge Hill just signed it. My question is just, should I read that order to be his interpretation of the agreement? If the question is what does paragraph 6B mean, the judge issues a ruling saying you're in violation because you're not doing X, Y, and Z, you need to do X, Y, and Z, then we understand that that's his interpretation of the paragraph? I don't... Quite frankly, it's not clear because he didn't make any findings, but the order doesn't say I find this, I find it. He just says you need to do this, and the 6B, which he made, and therefore he ordered my party to do these things, which are not terms of the agreement. The reason is that paragraph 6B talks about the concept of targeted advertising and ad words when you put it in the context of the settlement agreement, and you understand what Google and... You disagree with his interpretation, right? I get that. I'm just... I'm not sure... You're saying I can't glean from his order what his interpretation was, and therefore I need to send it back and ask him, what did you think this paragraph meant? Yes, because we are all assuming what he... The assumption is that he was interpreting paragraph 6B to say you can't put a chair with your trademark on a web page on Facebook with your own product if it's somehow... And you do that in the United States where you have a right to do it, and now you... If that is accessible, can be seen by somebody searching the internet in the United Kingdom, that's a violation when paragraph 6B has nothing, nothing whatsoever to do with visible content. And if you understand the agreement and you understand what the search engines and the shopping sites say, they have this targeted advertising program that use terms and keywords, and the person that has that page, that video, you go into those sites and you preset certain directed advertising terms, and so that when user, you and me go on the internet and you search, you put in things, how does it get to that, the video? Because you pre-programmed this targeted advertising with these terms, and if you understand that from those websites and you read this contract, it says terms, with or without other words that use. It draws the language right from those platforms, and it makes sense because the visible content prohibitions of the agreement are in other sections of the contract very clearly. Paragraph 6B has nothing to do with visible content, and Judge Hilton assumed it did, because he did not understand what AdWords and these terms were. He viewed it as advertising, which you would think in the old world, the non-internet world, you would have something visible. This is not visible content at all, and he misunderstood the agreement, and if he had made the findings, I submit, and actually got into the understanding of the agreement, I think this would have been seen, but I think on this record, as we've submitted on the brief, on this record, to understand the plain meaning of 6B, this court can rule that the plain meaning of that is targeted advertising on these platforms with this non-visible targeted advertising, which Long does not allege that we violated. I don't want to take over your, get into your rebuttal time here, but this evidence you're talking about, about how the AdWords are used and the invisible content, did you present evidence along these lines? Your friend on the other side says no parole evidence was presented in the district court. In his declarations, your honor, he put in the webpage links in his declaration in the court below, he opened the door, and that evidence was put in there in the district court at that time, and your honor, we believe it's appropriate to present that to this court, either for that reason, a rebuttal, for explanation, for attorney argument, I'm asking, did you present it to the district court? It was targeted advertising. Did you give the court that evidence? The evidence was in his, was cited in his declaration. The district court for an evidentiary hearing? Yes, your honor. You asked for an evidentiary hearing? Yes, your honor. To call witnesses and to present evidence? We did, yes, we said. And you presented evidence? No, no, he didn't, he ruled that that was not necessary. He ruled it was not necessary. You asked for the evidentiary hearing, and they asked for an evidentiary hearing as well? No, no, he did not. I don't fully evict it. They object to your evidentiary hearing? I don't know if it was an objection. But you were denied an evidentiary hearing? That's correct. All right. Thank you, your honor. So I'll reserve the rest of my time for rebuttal. Mr. Riley? May it please the court, Craig Riley here for the appellees. It's Wong and GTOR. None of the factual contentions that are the basis for the appellate argument now made by Woody were actually presented to the district court. Just to answer that one last question, not a single bit of evidence about adwords and keywords was presented by Woody below. When asked whether they had any concerns about the form of the order that the judge was about to enter, Woody was asked that question below and said, no, your honor, we don't. Woody's contract construction arguments that were the basis for the arguments made today, none of them were made below, even though now they say this is the obvious plain meaning of the contract. Not a single one of those arguments was made below. As the court knows, this is a concurrent use agreement to resolve a trademark dispute. The parties agreed they would continue to use their own marks subject to certain restrictions. Neither party has what they claim they have, which is the unfettered right to use whatever trademark they want, wherever they want, as their global brand. Both sides agreed to specific limitations. He says this paragraph 6 is just about adwords and keywords. That is not what they argued below. Below, they presented this as evidence from their only witness, which is Mr. Wu Pang, who submitted a detailed declaration. There are no other witnesses to call other than Mr. Wong, my client, and Mr. Wu Pang, their client. There were two witnesses that could have been called. Who could have been called. And to answer your question. Did they ask for the call of either one? He said he asked for evidence for hearing. Both parties submitted extensive declarations. You didn't answer my question. Your honor, they did ask for, they said that live the second part of your question is they proffered no additional witness or evidence they would have presented had they been given the opportunity to present a live testimony. And under civil rule 43C, the court is allowed to decide a case on affidavits if the record is clear. And in evidential hearings. Did you agree to let it be decided on the affidavit? Yes. Was there a stipulation then? Was there a stipulation of the parties as to the facts or that it could be decided on affidavits? Yes. As we pointed out, both below and again. And what was the judge supposed to do with conflicts in the affidavits? There weren't any. There were no conflicts. There were no conflicts. There was no stipulation or no conflicts. There was not a stipulation as in, but there were no conflicts. How are we supposed to know all that when there are no recitation of the, of the, of the facts supporting the ruling? Understood, Your Honor. And I, I, I've been appearing before Judge Hilton as long as he's been on the bench and no one ever accused him of prolixity. But his findings, which are stated on the record, are sufficient. He's a friend of mine. Yeah. And, and, and, and, and mine as well, Your Honor. I'm just stating, I'm dealing with the situation we have before us. Yeah. And, and what Judge Hilton said at, at the conclusion of the first oral argument was this, all right, well, I believe the matter can be resolved on the affidavits that, that have been presented here. And when we resolved on the affidavits, I, I remember that, which indicates to me he was going to make findings. That, that the affidavits are going to be looked at and make findings. In their disputes there, the, the, I guess that you, you, it's implied stipulation, the judge is going to make the finding. He says they asked to put on, he says they asked to put on evidence that was turned down. The judge didn't need it. Correct. But they made no proffer of what live testimony they put on. They didn't ask for a proffer. I'm sorry? They didn't want to ask them for a proffer. Did the judge ask them for a proffer? Did he want it? No. And, but they didn't offer, they clamored for a live, live testimony, but then I didn't, hadn't, and still have not identified another witness or any testimony that they would have or hear any evidence that they were unable to present by affidavit below. What they did present. How are we supposed to know what the facts are? We're supposed to look at the affidavits? But you need to understand that courts of appeals are generally, almost always, maybe always, courts will review, not a first view. Another court has to make the first view, and particularly with respect to findings of fact and conclusions of law that deal with those facts. I agree, your honor, and we don't have any here. What we do have, and again, this is. We have an order that you wrote. Correct. I know. And we have the judge's remarks. You wrote it and he signed it. And we have the judge's remarks. Is that right, counsel? Yes, it was prepared, it was a form of order that we prepared and submitted to the court. Verbatim? Yes. Verbatim it was signed. And before he signed it, he asked Rudy if they had any problems with the order, and they said in the record, they said no. Other than obviously object to it, that's why they appealed. They said they objected to the substantive ruling, but they had no concerns about the form of order. They were given that opportunity. And they immediately came up here with an appeal and moved for a stay. Correct. That's indicated they didn't like it much. Right. That they asked for a stay, and then they got another written document from the judge explaining something, saying it was not an injunction. It was a specific performance directive. Correct. Did you write that one too? That order? No, I did not, Your Honor. Okay. I did appear for those, I've been a part of this case all the way along. Then it came back up on another appeal. At the first hearing, Judge Hilton went on to say, and again under Rule 52A1, a court may make findings on the record transcript. He says, and it appears, it's clear to me that there is a violation of the language of 6B of this agreement, and you, Wong, are entitled to an order for the enforcement. He went on to say, I think I have found that we have ample evidence that your client, he was speaking to Woody's counsel, is using the terms that they're not supposed to be using, and my order should cover their activities and correct that situation. When it went back on remand, and he was asked to clarify whether this was an order of specific performance, he said yes, and when challenged by Mr. Bono at the hearing that it was really an injunction ordering him to do things way beyond, Judge Hilton said, my point was that the order I entered, I simply ordered you to comply with the settlement agreement. It is clear, and I think Judge Rushing was getting to this point, that if you look at both the order that was entered and his he was entering an order of specific performance, limited to contract performance, and that his findings were sufficient to support this. Now, even if he had made detailed findings, we'd still be here, this court would still be asked to review the same record, the actual record, to determine whether the judge's findings and conclusions are supported by the record. I respectfully submit that they are, with or without more detailed findings from Judge Hilton. First, below, when, although Mr. Bono says this is all about AdWords and keywords, this is what Mr. Wu-Pang, in his declaration, admitted below. This is his client. With respect to paragraph six, he says it constitutes, quote, social media restrictions that prevent Rudy from using its GT racing mark, or the words GT racing or GT space racing, in connection with certain goods in the European carve-out. That is class 9, 20, and 28 goods. He also admitted that the social media advertising posts that Rudy makes used those prohibited terms in connection with classes 9, 20, and 28 goods and were accessible in the ECO. This is found in the Joint Appendix pages 222, paragraph 9, and 223, at paragraphs 14 to 15. Mr. Wu-Pang also admitted that the customers in the ECO who accessed these social media posts to purchase class 9 and 20 and 28 goods were simply redirected to other websites to complete those sales. They were making advertisements and sales in the ECO exactly contrary to the terms of paragraph 6b. Now let me talk about 6b for a moment because Mr. Bono went through a litany of the contract terms governing content and the one he left out was paragraph 6b. There are twin aims in that paragraph. The first clause of paragraph 6b clearly is addressed to AdWords and is phrased in prohibitory language that's very clear. It states that Rudy will not buy AdWords from search engines. That clearly limits Rudy from buying as meta-tag AdWords using my client's trademarks or GT Racing. The second clause says that Rudy will not use GT Racing on Facebook and other social media platforms. This is a limitation on content. This is the exact formulation used in every paragraph he just cited to you as pertaining to contents. That's paragraphs 2, 3, 4, 5 all use the same will not use on prohibitory language. Paragraph 6b the second clause which we were seeking to enforce says that Rudy will not use GT Racing on Facebook. We are clearly talking about content in that paragraph that clause of that paragraph just as we are in every other paragraph in the agreement. Mr. Bono also catastrophizes in his argument saying that enforcing it the way it's written. Counsel I guess to be fair your opponent draws attention to the use of the word terms right will not use any terms that include GT Racing. So what's your argument on that? I think it's he's trying to make a distinction without a difference. Again this wasn't an argument that they made below at all. This came up for the first time in their briefing that what they're saying is that it would make meaningless the word terms but what's clearly agreed to in there is that they wouldn't use GT Racing in association with any either in isolation or in conjunction with any other words. For example GT Racing chairs, GT Racing mouse pads, GT Racing other products. So there was always this idea and these webpages that we've attached that are in the appendix show how they use GT Racing in all of these social media posts in association with other words describing the user experience of using a GT Racing chair things of that nature all of which are being done to attract customers who are then redirected. So again they are making these advertisements purposefully to attract purchasers, erode our goodwill, invade our territory if you will our protected territory and then make sales which they claim are outside. But the restriction as we advocated and Judge Hilton found was or other evidence even without live testimony is still subject to a clearly erroneous standard under Rule 52A6 and I would submit that that's the lens through which his findings should be viewed. But Woody is not being required to shut down any of these social media platforms. This was accounted for in the agreement itself. So you're wanting us to defer to findings that haven't been made? I respectfully... There's no record to support. You sound like you're the witness and I guess you are. And we're not fact finders. What I am reciting is all in the record in the affidavits. So I... But they're conflicting. The affidavits don't agree with one another. You have stipulated that they're all true. They don't say they're all true. You don't say they're all true. Both sides. You agree that everything his affidavit says is true? Does he agree with everything your affidavit says is true? No. They did not dispute... He would have some facts but somebody would need to digest them a little bit I suspect. They did not dispute the facts that we presented in our affidavit. They made certain admissions about which I just GT racing still in violation of that provision. The other evidence that they presented was about other methods they have been using to perform other provisions under the settlement agreement. But the key provisions of the settlement agreement and the evidence that we presented that was dispositive of this issue interpreting and applying paragraph 6B was not disputed by them. And they haven't identified any other evidence that they would have presented to the district court, even now, and certainly back then they didn't present any proffer of additional evidence that they would have presented. But even enforcement of it as we've advocated, it does not require what, as I said, they catastrophize down their social media platforms. This is accounted for in the agreement itself. It's limited goods, limited territory, but most importantly, and this provision wouldn't exist unless the provision means what we say it means, we were asked to pre-approve a dozen trademarks that they could use in Europe. These are listed in the joint appendix in Exhibit D, at joint appendix page 175. We pre-approved the trademarks that they could use on their social media advertising for all goods, everywhere. That agreement, that pre-approval by us would not have been necessary if you interpreted the contract the way Mr. Bono is now, for the first time to any court, arguing what it really means. This isn't the argument they made below, but it's certainly not supported in any way by the record. The record supports and is consistent with the interpretation that we have given all along, and that is that it's a limitation on content. I could, I see my time is eroding away. I want to answer any other questions that the court may have, but a couple of things. First, again, neither party can say what they want, where they want, using whatever trademark they want. That's the purpose of the use agreement. We conceded a lot of our rights in order to achieve this settlement with the other side. If you were to undo the protections that we secured through negotiation in paragraph 6B, to protect my client's interest in sort of its home base, the European Union countries, the United Kingdom, which we call the ECO or the European carve-out, it would completely undo the benefit of the bargain that he was making at that time. So, again, they argued that, they didn't argue below that it was ambiguous, they didn't proffer any parole evidence. When asking for an evidentiary hearing, they didn't identify a single other witness, because, by the way, there is no other witness. They have one principal, we have one principal. We would have put on Mr. Wong, they would have put on Mr. Wu-Pang. He would have testified exactly as he did in his affidavit. Mr. Wong would have testified exactly as he did in his affidavit. That point was raised before Judge Hilton at the first hearing, and they made no protest at the time. Mr. Bono was not representing him at that time, he was a different counsel, but they made no protest at that time that they needed evidentiary hearing to present live testimony from any other witness, or to present any other documents. Now, at the second hearing, when the same issue came up, Mr. Bono still didn't offer anything new. This was on the limited remand. So, again, and that was only for clarification, so even here now on appeal, they haven't identified any other evidence they would present. I respectfully submit this is an order of specific performance. They've pointed to three indicia. They say, well, this proves it's an injunction. That it orders them to do a specific task by a specific time on penalty of contempt. But let's look at what an order of specific performance is. And we've cited this, it's in our brief, pages 28 to 30. Under Virginia law, the remedy for specific performance allows the court to compel a specific act in compliance with the party's contract, exactly what Judge Hilton said he was doing. It may incorporate terms and conditions by reference from the contract, exactly what Judge Hilton's order does. It may state a specific time for the order to be enforced. And it may be enforced by contempt. There is no other remedy, by the way. And we point out that under Rule 70, specific performance orders are looked at differently than injunctions under Rule 65. So the arguments they're making, it sort of looks like a duck, quacks like It also looks just like a specific performance order. So you would look beyond what is being ordered. What is being ordered is exactly as Judge Hilton said, it is compliance with the party's contract. An injunction under Virginia law as a remedy would preserve or restore the status quo or prevent a future wrong. We requested an order of specific performance. That's what Judge Hilton entered. If the court has no other questions, I thank you for your consideration and ask you respectfully to affirm the judgment below. Thank you, Mr. Riley. Mr. Bono, you have time reserved. May I respond, Your Honor? Yes, sure. You have time reserved. Thank you very much. With regard to Judge King's questions about conflicts in the affidavits, it's blatantly in conflict. Mr. Peng's declaration in JA 222 directly disputes that Woody has an obligation to take down social media advertising in other countries merely because it's inaccessible in the ECO. He definitively disputes that, says he bargained for the right to do that. So you couldn't have a more defined conflict in the facts just on that alone. Secondly, I specifically asked at the second hearing in front of Judge Hilton for findings of fact and conclusions of law and evidentiary hearing under the Hensley case, even if it was viewed as a specific performance order only, which I respectfully submit it does not. Third, the order, if you read it, is an injunction, and it does because it pulls out terms that are not in the agreement. It says, for example, just in the first ordering paragraph, it says, Woody, take down all posts whenever made on its proprietary social media platforms that are accessible in the European carve-out. That phrase, which are accessible in the European carve-out, does not appear anywhere in the settlement agreement. That is something they want to engraft on the settlement agreement. Not there, not bargained for, not agreed to. That is, in fact, just the opposite. Woody bargained for the accessible notion that in this ordering injunction is not in the agreement. This is clearly an injunction. He argues for specific performance. So this tells enumerated steps. We have to do this. We have to do this. We have to do this. We have to do this. Not in the agreement. We have to do it by a certain date or we're going to be held in contempt. It is an injunction, and it clearly meets the cases, which I think were cited in one of this court's preliminary orders. The Tenth Circuit case says you don't have to use a magic word. And whether Judge Hilton thinks that's an injunction or not, with all due respect to Judge Hilton, is not really the defining point. Because when you look at that order, it is an injunction, or at least it's an injunction, has an injunctive nature order. And in addition to not making findings of fact, conclusions of law, or allowing argument or testimony as to the conflicting affidavits, he never analyzed the eBay factors for entering this He never made any findings with regard to irreparable harm. I have a question about that. It seemed odd to me, but maybe it's not. Maybe you can explain. Why should a party have to show irreparable harm for their contract to be enforced? So this was a proceeding where you had, you all reached this settlement agreement as part of this litigation, and then there was a window of time to come into compliance with it. And it wasn't apparent to me why someone, why one party would have to show irreparable harm to force the other party to come into compliance with the agreement. To satisfy the requirements for an injunction, if they sued and said we breached, the normal proceeding is that they could establish the breach, and they could prove monetary damages if there was a breach, and if they sustained damages. That's the normal course. An injunction is an extraordinary remedy, even in a breach of contract situation. But here it's a little different, right? Because the whole point of this window after the settlement agreement was reached was to allow the party's time to come into compliance with the agreement. And then the day after that lapse, while the case is still open, they say, hey, look, they're not in compliance yet. Please order them to comply. And that, if it had simply just been compliance with the terms as they were negotiating, Your Honor, perhaps, but the order went well beyond that. It went beyond the agreement. So you think if I, did you, is your answer saying if I agree with Judge Hilton that that's what the order, that's what the agreement requires, I agree with his agreement said, then it is an injunction? No, I think that's an added element, an added factor, Your Honor. It's not preclusive of whether it's an injunction or not. I'm just pointing out that even beyond, the order as written is an injunction I respectfully submit. And I believe because of that, and because now it's turned into a permanent injunction with the final judgment, and that was the only order we agreed to that my counsel misspoke, the form of that injunction, the form of that judgment because it was attached to the settlement agreement. We never agreed with this April 29 order of Judge Hilton. Never, never, never, never. I would like to make one point if I could because in looking at 6B, and I was sort of surprised when he said, well, I never mentioned 6B because that's the centerpiece of this dispute. This whole dispute is you have this massive settlement agreement. There's only allegation of a violation by my client is this one phrase, one phrase buried in a subpart of this 6, paragraph 6, 6B. And he doesn't, and he only takes issue with the second phrase which is, will not use on Facebook or any other social media platform any terms, as Your Honor pointed out, that include with or without other words. Now, I respectfully submit that if they wanted to bargain for a prohibition of my client posting on a social media platform its trademark, that would not have been written that way. It's a little confusing, right, because there are the other paragraphs you mentioned like paragraph 2 uses explicit language about metadata. It refers to metadata. It refers to using it visibly or in programming or code. You know, the argument you're making about visibly and invisibly is a clever one, but the agreement suggests that if that's what they meant, they'd use those words because they're used elsewhere. I'm not sure about your adjective clever because I don't know how you're using it. I'm sorry, I mean it complimentary. Then I'll take it. But it's a, it has some appeal, right, when you understand how these sites work. But then I doubt, I start to doubt that when I see that elsewhere in the agreement it specifically calls out visible and invisible. Well, the point is the parties knew, knew this difference, and the parties knew how to say if they wanted to say something visibly on or content appearing on, they knew how to say it and they said it in this very agreement. Paragraph 6B doesn't say it. It uses the word on, which if one looks at the Merriam-Webster's Dictionary for the word on and its use as a preposition, you'll get a list of about 25 definitions. It is a very varied word, I respectfully submit. One of the definitions of on is respect to, with respect to. That is the context of this word taken in our English language. We'll not use on Facebook terms. It's simply saying you won't use the terms on the Facebook platform, but terms is not visible. It's not talking about putting these words on, excuse me, on the pages that the user would see. It's talking about the directed advertising, the ad word function, which is the first phrase of this sentence. And I will say, look, what they're asking for is you to interpret the first phrase one way and the second phrase the other way. They never argue that using ad words on Google is something that is visibly on the content of anywhere. It's not. And you would phrase it this way. If they were to ask my client on the witness stand, how would they ask him whether Rudy is using ad words? The question would be, are you using ad words on Google? That would be the English question. That's not saying you're using ad words on the visible content of Google or the shopping sites, Amazon or anything. It's the predetermined directed advertising program that these websites have. The word on here is not something that connotes visibly on. They knew how to say that in this agreement, and they said it, and they didn't use it here. And this is strictly in the context of with respect to. So what they're saying is, and the phrase, I would say this, when you look at 6B, and this is very important, the phrase, any terms that include, with or without any other words, any of the following, GT racing, that phrase is applicable to both the ad word phrase and the use phrase of Facebook. Because, and it says, will not buy ad words from Google. That's not a total preparation. It's saying, will not buy ad words from Google. I mean, it should say contain any terms that include. That last phrase applies to both Google ad words and using on Facebook their terms. So it's an equal use of that phrase, and they don't contend Google ad words or the like. I mean, you have on Amazon, there's Amazon ads. There's on the other shopping sites, Newegg. We've pointed this out. They have their own phrase. Ad words is Google word. Others use different words. But it's talking about the non-visible directed advertising programs that these platforms have. And if they wanted to negotiate this settlement and have my client agree, agree that they would not use their branded share in an advertisement anywhere in the world, even though they specifically bargained for the right to do that, and they paid $4.5 million for the right to do that, that somehow they wanted to say, no, you can't do that. You can't do that in the United States. You can't do that because somebody in the U.K. might see it. That, it would not have been buried in paragraph 6B. It would not have been phrased this way. This is not what this means. It's very clear it doesn't mean this. They're overreaching. Let me get you out of the weeds a minute. Your time's way up. I'm sorry. I apologize. Chief Judge Gregory has been very gracious to you. What do you want us to do with this case, your two appeals? Your Honor, I – Be succinct. Well, Your Honor, I believe at the very least you should reverse this order and remand for further proceedings, findings of fact, and conclusions of law and an evidentiary hearing because I believe that that has to be done in the context of this order. And if you do that, I respectfully submit that you continue to stay in effect until that is done and we can see what Judge Hilton does so my client is not prejudiced by the additional time on this. And if you're unwilling to accept my argument at face value on what the agreement says based on this record, which I think you can do if you wanted to, but I think at the very least you would need to remand on this record as I've indicated. Thank you. Thank you very much. I appreciate the gracious time allotment you've provided for me. Thank you very much. Thank you, Mr. Bono. Thank you, Mr. Riley, as well. I appreciate your arguments. Again, we suspended our tradition of coming down to greet you under the circumstances, but know that we appreciate your arguments and your being here. So we wish you well and we'll ask the clerk to adjourn the court.
judges: Roger L. Gregory, Robert B. King, Allison J. Rushing